IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SCOTT ELLIOTT TURNER,          *

    Plaintiff,          *

v.          *          Civil Action No. GLR-17-1286

ANNE ARUNDEL COUNTY          *
DETENTION CENTER, et al.,
                     *

    Defendants.

\*\*\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Dr. Luis Rivera's Motion to Dismiss or, Alternatively, for Summary Judgment (ECF No. 22).[1]  The Court, having reviewed the Motion and supporting documents, finds no hearing necessary.  See Local Rule 105.6 (D.Md. 2016).  For the reasons outlined below, the Court will grant the Motion.

## I. PROCEDURAL BACKGROUND

In a Complaint filed May 10, 2017, Plaintiff Scott Elliott Turner stated that he was arrested subsequent to total knee replacement surgery, and held at the Anne Arundel County Detention Center ("AACDC").  (Compl., ECF No. 1).  Turner claimed medical personnel at AACDC would not see him to assess his swollen knee, which required follow-up surgery and rehabilitation.  (Id. at 2).  Turner, whose Complaint was construed

---

[1] Also pending is Turner's Motion to Deny Anne Arundel County Detention Center's Request to be Excluded (ECF No. 9).  In its June 15, 2017 Order, the Court dismissed Anne Arundel County Detention Center because it was not a proper defendant in a 42 U.S.C. § 1983 action.  (June 15, 2017 Order, ECF No. 10).  Accordingly, the Court will deny the Motion as moot.

as a civil rights action under 42 U.S.C. § 1983, sought "unspecified damages" for the denial of treatment. (Id. at 3). Given that Turner could suffer lasting injury if his knee problem was ignored, the Court construed Turner's request as one seeking a preliminary injunction, and issued a Show Cause Order for AACDC. (May 10, 2017 Order, ECF No. 5).

Counsel for AACDC responded and provided a copy of Turner's medical records. The records revealed that Turner, who was arrested and booked at AACDC on March 8, 2017, reported that he had a left total knee replacement on June 13, 2016. Turner claims he was scheduled for revision in April 2017, but was arrested before the procedure could be performed. (Inmate Medical File at 62, 100, ECF 7-3).[2] On March 9, 2017, the day after booking, Turner requested medical assessment due to pain in his knee and elbow. (Id. at 40). That same day, Turner was seen by a registered nurse, who told him to elevate his knee and prescribed crutches. (Id. at 42–43). On March 14, 2017, Turner asked to see a doctor, not a nurse practitioner, again complaining of pain in his knee and elbow. (Id. at 30). The record did not suggest that Turner's request was met.

Based on the initial review of the medical records, the Court found that Turner had been assessed and assisted by medical personnel, but his knee problem, which may require surgical attention, remained unresolved. (June 15, 2017 Order, ECF No. 10). The Court further found that Turner has contributed in part to his discomfort, because he refused crutches in order to continue working. (Id.). The Court denied Turner's request for a preliminary injunction and ordered Dr. Rivera to respond to the Complaint. (Id.).

_____

[2] Citations to Turner's Inmate Medical File refer to the CM/ECF pagination.

Turner appealed the Court's order denying preliminary injunctive relief to the U.S. Court of Appeals for the Fourth Circuit. (ECF No. 14). The Fourth Circuit dismissed Turner's appeal in an unpublished per curiam opinion. See Turner v. Anne Arundel Cty. Det. Ctr, et al., No. 17-6793 (4th Cir. Oct. 20, 2017).

On August 22, 2017, the remaining Defendant, Dr. Rivera, filed a Motion to Dismiss or, Alternatively, for Summary Judgment. (ECF No. 22). On August 31, 2017, Turner filed an Opposition. (ECF No. 24). Dr. Rivera filed his Reply on September 14, 2017. (ECF No. 25).

## II. DISCUSSION

### A. <u>Standard of Review</u>

Dr. Rivera's Motion is styled as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C

Wright & Miller, <u>Federal Practice & Procedure</u> § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Here, Turner was on notice that the Court might resolve Defendants' Motions under Rule 56 because Dr. Rivera styled his Motion in the alternative for summary judgment and presented extensive extra-pleading material for the Court's consideration. <u>See</u> <u>Moret v. Harvey</u>, 381 F.Supp.2d 458, 464 (D.Md. 2005). In addition, Turner filed an Opposition and several other filings that included extra-pleading materials in support of his claim. (<u>See</u> ECF Nos. 24–28). Accordingly, because the Court will consider documents outside of Turner's Complaint in resolving Dr. Rivera's Motion, the Court will treat the Motion as one for summary judgment.

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and

declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.** **Analysis**

Turner filed suit while he was being held at AACDC as a pretrial detainee. The constitutional protections afforded a pretrial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 (1979). "The due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (quoting Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," Gregg v. Georgia, 428 U.S. 153, 173 (1976). Scrutiny under the Eighth Amendment "is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F. 3d 630, 633 (4th Cir. 2003). In the context of delay or denial of medical care, an Eighth Amendment violation arises when the actions of a defendant, or the failure to act, amount to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 105–06 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. Farmer, 511 U.S. at 839–40. True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk. Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter thus becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Virginia Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844).

Here, there is no dispute of material fact that Dr. Rivera did not act with reckless disregard to a substantial risk of serious harm to Turner. The evidence in the record reflects that Dr. Rivera did not have the subjective recklessness required to establish deliberate indifference to Turner's medical condition. In his Declaration, Dr. Rivera avers that he does not screen patient requests for healthcare, nor is he responsible for scheduling appointments. (Rivera Decl. ¶ 5, Def.'s Mot. Dismiss Summ. J. ["Def.'s Mot."] Ex. B, ECF No. 22-4). Dr. Rivera attests that he did not refuse to examine Turner for his knee complaints and was "not aware of Turner's complaints regarding knee revision surgery." (Id.). Dr. Rivera further attests that nursing staff did not refer Turner for an appointment prior to the initiation of Turner's lawsuit because they had determined that his knee and elbow problems could be addressed through conservative measures, such as Ace wraps and Motrin, which Dr. Rivera approved. (Id.). Turner's medical records also reflect that Dr. Rivera was not made aware of Turner's complaints regarding his knee. (See Def.'s Mot. Ex. B-1 ["Medical Records"], ECF No. 22-5).

In response, Turner raises three principal arguments.[3]  First, Turner asserts that he submitted multiple sick call slips complaining of pain.  Turner contends that these sick call slips show that he told Corizon, the company that provides health care to AACDC detainees, that he was in pain and asked for treatment.  Second, Turner provides unverified statements from fellow detainees Steve Robertson, Edward Singer, and Tyler Smith as to his limp and reliance on a cane, which Turner claims rebut statements in his medical records that his gait is normal.[4]  (Pl.'s Opp'n at 3, 4, 9–11, ECF No 24).[5] Finally, Turner points to a sick call slip from March 14, 2017, which indicates that an NP intended to refer Turner to a doctor for follow-up care, but he notes that did not see Dr. Rivera until August 8, 2017.  (Id. Ex. 1, ECF No. 24-1; Def.'s Mot. Ex. B-1).  Even if the Court assumes Turner's contentions are true, none of them create a dispute of material

---

[3] In his Opposition, Turner appears to assert two new claims. First, he raises a claim under the Americans with Disabilities Act premised on the allegation that he could not obtain a particular job unless he returned his crutches. (Pl.'s Opp'n at 1).  Second, he appears to assert a medical negligence claim against Dr. Rivera.  (Id. at 4).  But Turner is "bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint."  See Zachair, Ltd. v. Driggs, 965 F.Supp. 741, 748 n.4 (D.Md. 1997) aff'd, 141 F.3d 1162 (4th Cir. 1998).  Accordingly, the Court will not consider these allegations.

[4] Turner also states in his Opposition that Nurse Practitioner Mary Krauss told him that Dr. Rivera did "not feel it is necessary . . . to see you."  (Pl.'s Opp'n at 2). Although Krauss's statement could arguably raise the inference that Dr. Rivera was aware of Turner's complaints, it fails to create a dispute of material fact regarding Dr. Rivera's knowledge of a substantial risk of harm to Turner.  Further, Turner did not put this statement in a sworn affidavit as required to oppose a motion for summary judgment. See Fed.R.Civ.P. 56(a).  Even if Turner had submitted an affidavit, Krauss's statement is hearsay without an exception, and therefore is inadmissible.  See Fed. R. Civ. P. 56(c)(4) (requiring an affidavit to "set out facts that would be admissible in evidence"). Accordingly, the Court did not consider Krauss's statement in resolving Dr. Rivera's Motion.

[5] Citations to Turner's Opposition refer to the CM/ECF pagination.

fact regarding whether Dr. Rivera was aware of Turner's complaints, let alone of a substantial risk of harm to Turner. Without knowledge of Turner's complaints, Dr. Rivera could not have exhibited deliberate indifference to Turner's medical needs. See Brice, 58 F.3d at 105 (quoting Farmer, 511 U.S. at 844).

Nevertheless, Turner asserts that Dr. Rivera is liable because he is the Medical Director of AACDC and his staff "dropped the ball." (Pl.'s Opp'n at 5). But there is no respondeat superior liability under 42 U.S.C. § 1983. Love–Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004). Thus, "for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" Garraghty v. Com. of Va., Dep't of Corr., 52 F.3d 1274, 1280 (4th Cir. 1995) (quoting Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)). As discussed above, Turner has not made such a showing.

In sum, the Court concludes that there is no dispute of material fact that Dr. Rivera was not deliberately indifferent to Turner's medical needs. Accordingly, the Court will grant Dr. Rivera's Motion.[6]

---

[6] "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" Goldfarb v. Mayor of Baltimore, 791 F.3d 500, 508 (4th Cir. 2015) (quoting Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir.2009); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 466 (4th Cir. 2011). In particular, a court may take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute," in that it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201.

In this case, court personnel have confirmed that Turner is no longer a detainee held at AACDC. On September 11, 2017, Turner was found guilty of second-degree

### III. CONCLUSION

For the foregoing reasons, the Court will grant Dr. Rivera's Motion to Dismiss or, Alternatively, for Summary Judgment (ECF No. 22) and deny as moot Turner's Motion to Deny Anne Arundel County Detention Center's Request to be Excluded (ECF No. 9). A separate Order follows.

Entered this 28th day of February, 2018

/s/

_____
George L. Russell, III
United States District Judge

---

assault. <u>See</u> <u>State of Maryland v. Scott Elliott Turner</u>, Maryland Judiciary Case Search, http://casesearch.courts.state.md.us/casesearch/inquirySearch.jis (Under "Search By Case Number," select "Anne Arundel County Circuit Court" and enter case number "C-02-CR-17-0007293"; then select "Get Case."). On December 18, 2017, Turner was sentenced to six years of incarceration, with all but four years suspended. <u>Id.</u> As a result, Turner is now incarcerated at Central Maryland Correctional Facility in Sykesville, Maryland. <u>See</u> <u>Inmate Locator</u>, Dep't of Pub. Safety & Corr. Servs., http://www.dpscs.state.md.us/inmate/ (Under "First Name," enter "Scott"; under "Last Name," enter "Turner"; then select "Search."). Although Turner's failure to advise the Clerk of his new address provides a basis for dismissal of his case pursuant to under Local Rule 102.1.b.iii. (D.Md. 2016), the Court has considered the merits of Turner's claim.